UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Clifford G. Menyweather,

Plaintiff,

v.

Mall of America, Inc.,

Defendant.

Civ. No. 03-6113 (JNE/JGL)
ORDER

---

Plaintiff Clifford G. Menyweather appeared *pro se*.

Burke J. Ellingson, Esq., Brendel & Zinn, Ltd., appeared for Defendant Mall of America, Inc.

---

Clifford G. Menyweather brought this action against his former employer, Mall of America, Inc. (MOA), asserting claims of race discrimination in violation of federal and state laws.[1]  Both Menyweather and MOA move for summary judgment.[2]  For the reasons set forth below, the Court grants MOA's motion and denies Menyweather's motion as moot.

## I.    BACKGROUND

In May 1994, Menyweather, an African-American male, was hired as a Food Court Team Member at the Mall of America.  At that time, and again in May 1999, Menyweather signed an Acknowledgement of Receipt of Team Member Handbook and agreed to abide by the rules and regulations of MOA.  Included in the Team Handbook is a copy of MOA's "No Violence" policy, which reads in part:

> Mall of America is also committed to providing you with a
> positive and safe work environment – that's why the mall developed the

---

[1]     The Court dismissed Menyweather's Fourteenth Amendment claim on February 14, 2005.

[2]     Plaintiff's Motion for Judgment is based on alleged procedural violations by MOA in this litigation and is not based on the underlying facts of the case.

> No Violence Policy.  The policy encourages courtesy and respect, and prohibits team members from acting in an aggressive, threatening or violent manner toward any other team member or guest.
>
> . . . .
>
> If the mall finds that a team member has violated the No Violence Policy, the team member will be disciplined – up to and including termination.

On January 22, 2003, while working as a Recycling Team Lead, Menyweather was involved in an incident with co-worker Duane Parent, a developmentally disabled Caucasian male.  While Menyweather and Parent were unloading empty cardboard boxes, Parent either threw or dropped a cardboard box on Menyweather's head.[3]  Menyweather did not report the incident at the time.  On January 28, 2003, Menyweather and Parent were involved in an altercation in the Housekeeping break room, during which Parent was knocked to the floor and left with a black eye and a bloody nose.  After an investigation, MOA concluded that Menyweather struck Parent and terminated Menyweather's employment.

## II.    DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

---

[3]     Menyweather and MOA give two very different accounts of the facts underlying this action.  The facts are recited here, unless otherwise indicated, in the light most favorable to Menyweather.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  They are not, at this stage in the litigation, binding factual determinations.

317, 323 (1986).  If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

MOA contends that it is entitled to summary judgment on Menyweather's claim of race discrimination under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17 (2000) (Title VII), and the Minnesota Human Rights Act (MHRA), Minn. Stat. ch. 363A (2004).  The three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs Menyweather's Title VII and MHRA claims.  The first step in the *McDonnell Douglas* analysis is for the plaintiff to demonstrate a prima facie case of discrimination.  *Id.* at 802.  If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  If the defendant meets this burden, the final step is for the plaintiff to show that the proffered nondiscriminatory reason is pretextual.  *Id.* at 804-05.

To establish a prima facie case of racial discrimination under Title VII and the MHRA, Menyweather must show that: (1) he belongs to a protected class; (2) he was meeting the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees who are not members of the protected group were treated differently.  *See Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000); *McIntire v. State*, 458 N.W.2d 714, 719 (Minn. Ct. App. 1990).  MOA asserts that it is entitled to summary judgment because Menyweather has failed to satisfy the fourth requirement of his prima facie case and

because MOA had a legitimate, nondiscriminatory reason for terminating Menyweather's employment.

## A.        Different Treatment for Similarly Situated Individuals

Menyweather has the burden of producing facts that similarly situated, non-African-American employees, were treated differently.  *See Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857 (8th Cir. 2004); *Clark*, 218 F.3d at 918.  The employee used for this comparison must be similarly situated in all relevant aspects; specifically, the employee must have engaged in the same conduct without any mitigating or distinguishing circumstances.  *See Clark*, 218 F.3d at 918.  Menyweather seeks to compare himself to Duane Parent, claiming that Parent was not terminated even though he also violated the No Violence Policy by dropping a cardboard box on Menyweather's head.

Based on the record before it, the Court concludes that Parent's actions during the January 22, 2003, incident involving the cardboard box were markedly different than those of Menyweather on January 28, 2003.  First, regardless of whether Menyweather struck or pushed Parent in the break room, Menyweather's behavior was violent and significantly more severe than Parent's actions  in throwing an empty cardboard box at Menyweather.[4]  *See Ward v. Proctor & Gamble Paper Prods. Co.*, 111 F.3d 558, 561 (8th Cir. 1997) (holding that an employee who grabbed a co-worker's finger was not similarly situated to the co-worker who then slapped the employee on the shoulder).  That Parent suffered a black eye and bloody nose

---

[4]        In his memorandum, Menyweather claims that he did not strike Parent.  Mindful that the facts must be considered in the light most favorable to Menyweather, the Court notes that the record establishes that Menyweather struck Parent on January 28, 2003.  Indeed, MOA produced evidence that Menyweather admitted to striking Parent with his fist during MOA's investigation of the incident.  Therefore, while there is no serious dispute that Menyweather struck Parent with his fist, the Court's conclusion does not change even accepting Menyweather's self-serving claim that he merely pushed Parent in the break room.

attests to the violent nature and severity of Menyweather's actions.  In fact, there is evidence that a pool of Parent's blood was left on the break-room floor after the altercation.  On the other hand, there is no evidence that Menyweather was injured by the empty cardboard box or that Parent violently threw it at him.  Second, MOA submitted evidence the Menyweather entered the break room and confronted Parent while he was alone changing clothes.  Conversely, Parent threw an empty box at Menyweather in the presence of at least one other employee while performing recycling duties.

Menyweather also claims that Parent provoked and pushed him on January 28, 2003.  To the extent that Menyweather relies on this unsubstantiated assertion to support his argument that he and Parent were "similarly situated," the Court again rejects the notion that Menyweather's actions were substantially similar to Parent's.  Even accepting Menyweather's claim that Parent pushed him in the break room, there is no evidence that Parent struck or pushed Menyweather with an amount of force so as to cause injury.  Conversely, Menyweather inflicted physical injuries on Parent.   Therefore, even if Parent pushed Menyweather during the same incident, the escalated nature and increased severity of Menyweather's actions preclude a finding that the two were "similarly situated" on January 28, 2003.  *See Ward*, 111 F.3d at 561 (explaining that employer is not obligated to treat escalating conduct as substantially similar).

In sum, Menyweather has not pointed to any other employee accused of physically striking or pushing a co-worker under the same circumstances and with comparable severity who received different disciplinary treatment.[5]  Accordingly, Menyweather fails to establish a prima facie case of discrimination.  *See Clark*, 218 F.3d at 919.

---

[5]     The Court notes that Parent did receive a "Verbal Counseling" from his manager after the incident with Menyweather.

**B.       Nondiscriminatory Reason and Pretext**

Even if Menyweather had established his prima facie case of race discrimination, there is no question that MOA has offered a legitimate, nondiscriminatory reason for discharging him—namely his violation of the No Violence Policy.  *See Clark*, 218 F.3d at 919 (noting that actual violence towards a fellow employee is a legitimate reason for termination); *Ward*, 111 F.3d at 560 (same).  Menyweather, however, argues that MOA's proffered reason for terminating him was a pretext for racial discrimination.  To show pretext, Menyweather must show that a discriminatory animus lies behind MOA's nondiscriminatory explanation for discharge.  *See Wheeler*, 360 F.3d at 858.

Menyweather attempts to show pretext with evidence that the No Violence Policy was applied differently to other individuals, particularly Parent.  While instances of disparate treatment can demonstrate pretext, Menyweather must prove that he and Parent were similarly situated in all relevant respects.  *See id*.  The Eighth Circuit Court of Appeals has noted that the burden for establishing "similarly situated" at the pretext stage is "rigorous."  *Id*.  Here, Menyweather must make a showing that he and Parent were "involved in or accused of the same offense" and disciplined differently.  *Id.*  For the reasons discussed above, the Court finds that Menyweather has failed to demonstrate that he was "similarly situated" to Parent.  In fact, Menyweather has not offered any evidence that MOA applies the No Violence Policy in a discriminatory manner or that it terminated Menyweather because of his race.  Therefore, there is no evidence before the Court that would warrant an inference that MOA's proffered reason for discharge is pretextual.  Accordingly, MOA is entitled to summary judgment on Menyweather's claims of race discrimination.  *See id.*

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.    MOA's Motion for Summary Judgment [Docket No. 28] is GRANTED.

2.    Menyweather's Motion for Judgment [Docket No. 40] is DENIED AS MOOT.

3.    Menyweather's Amended Complaint [Docket No. 5] is DISMISSED with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:   June 3, 2005

s/ Joan N. Ericksen_____
JOAN N. ERICKSEN
United States District Judge